UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMCO-GERSHENSON PROPERTIES L.P.,

      Plaintiff,

v.

HOOVER ANNEX GROUP LLC,
HOOVER ANNEX HOLDING, LLC,
HOOVER ELEVEN CENTER GROUP LLC, HOOVER ELEVEN CENTER HOLDING LLC, M & W PROPERTIES GROUP LLC, and HOOVER ELEVEN INVESTMENT HOLDING LLC,

      Defendants.

                                     /

Civil No. 04-74795
Hon. John Feikens

**OPINION AND ORDER**

      This cause of action arises out of Plaintiff's Purchase Agreement to buy Defendants' shopping center. Plaintiff alleges that Defendants violated (i) the Securities and Exchange Act of 1934 (15 USC § 78j) and the rules issued pursuant to that section including Rule 10b-5, 78 C.F.R. § 240.10b-5; (ii) the Purchase Agreement's warranties; and (iii) a class action settlement agreement, thus harming Plaintiff as a third-party beneficiary. Defendants move to dismiss Plaintiff's Complaint in its entirety. In my consideration of that motion I have concluded that pursuant to Fed. R. Civ. P. 19(a)(i), URS Corporation, Plaintiff's property inspector, is an indispensable party to this cause of action.

**I. FACTUAL BACKGROUND**

      Plaintiff, Ramco-Gershenson Properties L.P. ("Ramco"), is a Delaware limited

partnership doing business in Oakland County, Michigan. (Pl.'s Compl. ¶ 1.)  Defendants include: Hoover Annex Group LLC, Hoover Annex Holding LLC, Hoover Eleven Center Group LLC, Hoover Eleven Center Holding LLC, M & W Properties Group LLC, and Hoover Eleven Investment Holding LLC.  Id. at ¶¶ 2-7.  Defendants are all limited liability companies doing business in Oakland County, Michigan and registered at 30400 Telegraph Rd. Suite 100, Bingham Farms, Michigan.  Id. at ¶¶ 2-7.  URS Corporation ("URS"), Plaintiff's property inspector, is a Delaware corporation with its principle office in the State of California and it conducts business within the State of Michigan.

Defendants, prior to November, 2003, owned 100% of the membership interest in three limited liability companies (the "LLCs").  (Pl.'s Compl. ¶ 11.)  These LLCs owned the Hoover/11 Shopping Center (the "Shopping Center") in Warren, Michigan.  (Pl.'s Compl. ¶ 12.)

In 2001, Defendants participated in a class action lawsuit regarding phenolic foam insulation contained in the Shopping Center's roofing deck.[1]  (Def.s' Br. at 4.)  Pursuant to the class action settlement, Defendants received $26,507.25.  (Def.s' Br. at 4.)  In accordance with a Settlement Agreement (the "Release"), signed on December 13, 2001, Defendants claim that they used the entire amount of settlement funds plus an additional $8,143.75 to remedy sections of the roof deck that showed signs of damage from the phenolic foam insulation.  Id. at 4.

### 1. *URS's Objective*

On September 30, 2003, URS sent Plaintiff a proposal to perform a Phase I Environmental Site Assessment (the "ESA") and a Property Condition Assessment (the "PCA")

---

[1] Plaintiff claims that phenolic foam roofing insulation causes the metal roofing deck to corrode.  (Pl.'s Compl. at ¶ 20.)

at the Shopping Center. (Pl.'s Supp. Answers at 68.) URS explained that the ESA would "identify the potential environmental concerns [...] by visual observation and by standard information gathering procedures." (Pl.'s Supp. Answers at 68.) URS also proposed a PCA "to assess the general condition of the construction of the building and document obvious problems or visible defects based on visual observations and discussions with property management and tenant(s)." Id. at 72. The PCA was an assessment of various building components including the roof. Id. at 72.

> URS specifically noted that the PCA would:
>
> determine what roofing system was used and assess its general condition. Observations will be made relative to the general condition of the membrane flashing, penetration, and expansion joint details and the overall condition and performance of the drainage system. The interior surfaces of the roofing will also be observed to determine the evidence of water leakage. Available information will be reviewed to determine the age of the roof and its expected remaining useful life.

(Pl.'s Supp. Answers at 73.) URS stated that it "assumed that all drawings associated with the original construction and any subsequent renovations are available for our review and that the property manager will escort us through the areas to be inspected." Id. at 72.

URS also appended to its proposal a description of a PCA. Id. at 76. This appendix stated that URS may provide the property owner with a "Pre-Survey Questionnaire & Disclosure Schedule" (the "Questionnaire") to make the property owner disclose, among other things, costs incurred for repairs, improvements and replacements regarding parts of the building, including the roof. Id. at 77. URS stated that the Questionnaire will be included in its final report and that report will clearly state if URS cannot formulate its opinions and complete the PCA because the Questionnaire has not been completed. (Pl.'s Supp. Answers at 76-7.)

URS stated it planned to only visually observe readily accessible property components and explained that the PCA was a "non-intrusive, visual survey" and that URS would not conduct "any exploratory probing or testing[.]"  Id. at 77-8.  Furthermore, the PCA "is not [...] a warranty or guarantee of any system's or component's physical condition or use, nor is a PCA [a] substitute for any system's or equipment's warranty transfer inspection."  Id. at 79.

### 2. URS's Conclusions

On November 26, 2003, URS reiterated in its PCA that its "[o]bservations [...] were made without operational testing and/or removing or damaging components of the building systems.  Consequently, some system specific assumptions were made regarding the existing conditions and operating performance of each system."  Id. at 6.  The PCA was based on "site reconnaissance; limited interviews with property management and maintenance personnel; inquiries or attempted inquiries with appropriate local government authorities [...] and a review of available construction documents as provided by the building management."  Id. at 3.  URS attached to the PCA "the partially completed [Questionnaire.]"  Id. at 14.

> Based on the above information URS concluded:
>
> [t]he roof systems at the shopping center were constructed of metal decking on open-web steel joists.  Construction plans indicated that the roof systems had rigid insulation. [...]
>
> Based on the apparent age and condition, it is reasonable to assume that certain roof systems are no longer under warranty.  However, the roof systems installed in 1992, 1993, and 1995 are reportedly under warranty until 2012-2015. [...]
>
> The roofing appeared to be in good to fair overall condition.  Based on the estimated useful life of the membranes, partial replacement of the roof covering should be expected during the evaluation term. [...]
>
> Roof evaluation should be conducted by a professional roofing inspector on a twice-annual basis and corrective or preventative repairs should be made

      accordingly.  A qualified inspector will be the best judge of the need to
recover/replace the roofs and the specific timing associated with such actions.

(Pl.'s Supp. Answers at 22-3.)

### 3. Purchase of the Shopping Center

On November 12, 2003, Ramco entered into a series of agreements including a Master Agreement and three Membership Interest Purchase Agreements (collectively, the "Purchase Agreements") to purchase Defendants' interests in the LLCs.  (Pl.'s Compl. ¶ 10.)  By purchasing the LLCs, Plaintiff gained ownership of the Shopping Center even though there was no actual sale of the Shopping Center.  (Hr'g Mar. 23, 2005.)  After the closing of the Purchase Agreements, and after Plaintiff assumed ownership and maintenance of the Shopping Center, Plaintiff discovered that the Defendants had been a party to the phenolic foam class-action lawsuit.  (Pl.'s Compl. ¶ 19.)  Plaintiff alleges that Defendants did not replace the phenolic foam insulation or otherwise remedy the Shopping Center's roof deck as required by the Release.[2] Id. at ¶ 24.

Plaintiff claims that Defendants had a duty, arising out of the Purchase Agreements and the Release, to inform Plaintiff of the class-action lawsuit and that Defendants allegedly violated that duty.  Id. at ¶¶ 15-18, 23.  Plaintiff also alleges that Defendants did not disclose to Plaintiff the settlement of the lawsuit as Plaintiff claims was required under the Purchase Agreements.  Id.

---

[2] The parties also dispute whether there are any current problems with the roof due to the phenolic foam.  (Hr'g Mar. 23, 2005.)  Plaintiff claims that it has not yet "had the opportunity to verify what [D]efendants did or did not do to the roof.  (Pl.'s Resp. at 21 n. 11.)  However, Defendants' Property Manager stated that Defendants "expended the funds received from the settlement by contracting to replace a portion of the roof and decking."  (Def.s' Br. at Ex. H (G. Pelot's Aff.) at ¶ 5.)  The parties also dispute the extent to which the Release in the last paragraph subsection (i) required Defendants to remedy the "roof system and/or roof deck[.]" (Hr'g Mar. 23, 2005.)

at ¶ 25.  Additionally, Ramco asserts that Defendants engaged in securities fraud by failing to disclose the class action settlement and phenolic foam insulation in the roofing system in connection with the sale of the membership interests.  (Pl.'s Compl. ¶ 30.)

## II. ANALYSIS

### A. Is URS an Indispensable Party Pursuant to Fed. R. Civ. P. 19

The Sixth Circuit teaches that Fed. R. Civ. P. 19(a) sets forth a three-step procedure for a court to determine whether a case should proceed in the absence of a particular party.  First, a court should decide whether a party "'is necessary to the action and should be joined if possible.'"  Painewebber, Inc. v. Cohen, 276 F.3d 197, 200 (6th Cir. 2001); quoting Soberay Mach. & Equip. Co. v. MRF Ltd., Inc., 181 F.3d 759, 763-4 (6th Cir. 1999).  A party is necessary if "(1) in the person's absence complete relief cannot be accorded among those already parties [...]."  Keweenaw Bay Indian Cmty v. Michigan, 11 F.3d 1341, 1345 (6th Cir. 1993).  A court should proceed to the second step if it finds that a party is a necessary party.  Painewebber, Inc., 276 F.3d at 200.  The second step requires the court to determine whether the party "is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction.  Id. at 200.  Third, the court should decide "'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed[.]"  Painewebber, Inc., 276 F.3d at 200; quoting Soberay Mach. & Equip. Co., 181 F.3d at 764.

### *1. Whether URS is a Necessary Party to this Action*

The first count of Plaintiff's Complaint is a breach of contract claim.  That claim, summarized, is: (i) Pursuant to the Master Agreement Defendants had a duty to disclose to URS the phenolic foam class action litigation; (ii) Defendants failed to provide that information to

URS; (iii) due to Defendants' failure to provide that information URS failed to discover the phenolic foam; and (iv) URS's failure to discover the phenolic foam harmed Plaintiff. I have not yet decided the motion to dismiss this count for failure to state a claim.

Complete relief cannot be accorded among those already parties because there are two possible arguments under which URS would be partly or wholly responsible for Plaintiff's damages. First, there is the argument that URS as a reasonable inspector, should have cured Defendants' alleged breach by discovering the phenolic foam, based on the information that Defendants did provide to URS or because a reasonable inspector would have discovered the phenolic foam problem. Second, there is the argument that Plaintiff's reliance on URS's report finding no phenolic foam problem was not justified, either because URS bears responsibility for misleading Plaintiff into believing that URS's conclusions were based on complete answers, or because URS was capable of determining whether the Shopping Center's roof needed to be replaced, was hired to do so, and did not make that determination.

The first theory is based on the premise that URS acted incompetently, and to the extent that I could find that URS was incompetent and caused Plaintiff damages, URS is a necessary party. Under the second theory, Plaintiff's damages arise out of its reliance on the URS report which never mentioned the phenolic foam; Plaintiff may have assumed that URS properly questioned Defendants in producing this report. URS's report demonstrates that URS informed Plaintiff that the Questionnaire was only partially completed and the report does not appear to mislead Plaintiff. However, URS does not state that based on Defendants' information URS could not formulate its opinions and complete the PCA. Under this theory, there are two scenarios under which URS is potentially liable. First, Plaintiff knew that Defendants did not

7

answer URS's questions, and therefore, Plaintiff should not have relied on the report as being complete. Or, URS misled Plaintiff into believing that it had questioned Defendants, and therefore, URS shares liability for providing a misleading report which, contrary to the proposal, failed to clearly disclose that the Questionnaire was not sufficiently complete for URS to complete its PCA.

I note that Michigan Courts have held that a vendee and its inspector bear the risk that the vendee will purchase a parcel of defective real estate if the vendee and his inspector have had an opportunity to inspect the property and the vendor did not hide any defects. Michigan courts have not found other vendor defendants liable in cases similar to this. The Michigan Court of Appeals has held that a defendant did not conceal and had no duty to disclose a condition where a plaintiff had a professional inspection of the house. Conahan v. Fisher, 186 Mich. App. 48, 49-50 (Mich. Ct. App. 1990). In another case, the Court of Appeals held that where the plaintiff along with a retained inspector investigated the premises there could be no grounds for finding that the seller had fraudulently concealed code violations. State-William Partnership v. Gale, 169 Mich. App. 170, 180 (Mich. Ct. App. 1988).

Although these cases deal with real estate transactions as opposed to securities transactions, they demonstrate that liability may be appropriately placed on URS, as the party that agreed to perform the property assessment. The defendants in these prior cases were not under a duty to "cooperate" with the plaintiff in their inspection of the premises at issue, (186 Mich. App. 48 (Mich. Ct. App. 1990); 169 Mich. App. 170, 180 (Mich. Ct. App. 1988)), nevertheless, I hold that URS as Plaintiff's inspector is an indispensable party. I reach this conclusion because any belief of Plaintiff's that the Shopping Center's insulation was free of

defects was potentially based on URS's assertions about the Shopping Center's insulation. Arguably, URS should not have made any assertion about the insulation because URS was aware that Defendants failed to complete URS's Questionnaire. Liability may attach to URS, as a property inspector that could have discovered the phenolic foam had it asked the proper questions and received answers or performed a more intrusive test of the roof, and cured Defendants' alleged breach.

For these reasons, I find that there is a question of fact as to whether URS, as an expert inspector, had it not been negligent, could have discovered the phenolic foam or would have misled Plaintiff into believing that there was no phenolic foam; or Plaintiff's reliance on URS's report was misplaced because the report was not based on completed a Questionnaire.

Furthermore, I hold that based on this reasoning URS is a necessary party because in the absence of URS "complete relief cannot be accorded among" Plaintiff and Defendants. Keweenaw Bay Indian Cmty, 11 F.3d at 1345.

### *2. Whether URS' Presence Would Deprive this Court of Subject Matter / Personal Jurisdiction*

#### a.  Subject Matter Jurisdiction

URS is a necessary party to this case, so I now determine whether this Court has subject matter jurisdiction and personal jurisdiction over URS. Painewebber, Inc., 276 F.3d at 200. This Court has subject matter jurisdiction over these parties pursuant to this Court's federal question jurisdiction. 28 U.S.C. § 1331.

This Court's federal question jurisdiction grants original jurisdiction over all civil actions arising under the laws of the United States. Id. Plaintiff has brought a civil action alleging a violation of 15 U.S.C. § 78j. (Pl.'s Compl. ¶¶ 26-31.)  Given that this Court's federal question

jurisdiction gives this Court original jurisdiction over Plaintiff's cause of action, URS's presence would not eliminate federal question jurisdiction as jurisdiction under this section does not rely on diversity of citizenship. S.C. State Ports Auth. v. Seaboard Air Line R.R. Co., 124 F.Supp. 533 (E.D.S.C. 1954). The other two counts are reached under supplemental jurisdiction. 28 U.S.C. § 1367(a).

### b. Personal Jurisdiction

This Court has personal jurisdiction over URS. A federal district court may exercise personal jurisdiction over a defendant if such jurisdiction is (1) authorized by the law of the state in which it sits, and (2) satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. Neogen v. Neo Gen Screening, 282 F.3d 883, 887 (6th Cir. 2002); citing Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994). Michigan's long-arm statute authorizes the exercise of limited jurisdiction over a nonresident corporation for claims arising from a corporation's contacts with Michigan, including "[t]he transaction of any business within the state." M.C.L. §600.715. In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-6 (1985), the U.S. Supreme Court stated that a party must purposefully avail itself of the "privilege of conducting activities" in a forum state to establish the sufficient minimum contacts which would permit that state to exercise jurisdiction over that party.

URS contracted with Plaintiff to perform an ESA and PCA on a Michigan property for a Michigan corporation. URS sent its employees to the Shopping Center site and had them review the property and create an opinion regarding the general condition of the building regarding its construction and potential environmental concerns. URS also financially benefitted from sending its employees to Michigan through its contract with Plaintiff. Due to these activities

URS has established sufficient contacts to permit this Court to exercise personal jurisdiction over URS.

Therefore, I have subject matter jurisdiction over URS and Michigan's long-arm statute permits me to exercise limited personal jurisdiction over URS.

### 3. Whether URS is an Indispensable Party

Having concluded that this Court does have subject matter/personal jurisdiction over URS, I now turn to the third prong of the test to determine whether in equity and good conscience I should permit this action to proceed in URS's absence. Painewebber, Inc., 276 F.3d at 200. The Sixth Circuit stated that a court should consider the four factors listed in Fed. R. Civ. P. 19(b) in making this determination. Id. at 202. These factors include:

> [F]irst, to what extent a judgment rendered in [URS's] absence might be prejudicial to [URS] or those already parties; second, the extent to which, by protective provisions in the judgment [...] the prejudice can be lessened or avoided; third, whether a judgment rendered in [URS's] absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

This case should not proceed in URS's absence. A judgment rendered in URS's absence would prejudice URS to the extent that I might determine the amount of URS's liability that arose as a result of Plaintiff's reliance on URS's report without providing URS an opportunity to defend itself. Meanwhile, Defendants can deflect liability by claiming that Plaintiff's damages were a result of improperly relying on URS's report as opposed to Defendants' omission. There is no one to protect URS's interests, and therefore the prejudice to URS cannot be avoided. Lastly, Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder, as Plaintiff may refile and add URS as an additional Defendant.

Thus, I hold that Plaintiff should join URS as a Defendant or face dismissal of its action without prejudice for failure to join an indispensable party.

## IV.  CONCLUSION

Having found that URS is an indispensable party to this action, I order that URS be added as an additional Defendant or that Plaintiff's breach of contract claim and third party beneficiary claim be dismissed for failure to join an indispensable party.  Plaintiff has until July 5, 2005, to join URS as an additional Defendant or this Court will enter an order of dismissal.

**IT IS SO ORDERED.**


s/ John Feikens_____
John Feikens
United States District Judge


Date:   June 14, 2005_____


| PROOF OF SERVICE |
|---|
| I hereby certify that a copy of the foregoing Order was served on the attorneys and/or parties of record on June 14, 2005, by electronic means or first class U.S. Mail.<br><br>                                s/Carol Cohron_____<br>                                Case Manager<br>                                Honorable John Feikens |

12